UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


DARRELL WHITEHORN,                    )
                                      )
            Petitioner,               )
                                      )
    vs.                               )         No. 4:09CV00881 AGF
                                      )
DAVE DORMIRE,                         )
                                      )
            Respondent.               )

**MEMORANDUM AND ORDER**

This matter is before the Court on the pro se petition of Missouri state prisoner

Darrell Whitehorn for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Following a

jury trial, Petitioner was convicted of second degree robbery and the forcible rape of

Candy Johnson, arising out of events that took place on January 26, 1999.  The jury was

unable to reach a verdict as to a second charge of the forcible rape of India McLucas

alleged to have occurred on December 17, 1998.  Petitioner was sentenced to 25 years on

the forcible rape conviction and to a consecutive term of ten years for the robbery

conviction.

For federal habeas relief, Petitioner asserts that the trial court erred and deprived

Petitioner of his right to due process of law by: (1) joining the two rape offenses for trial;

and (2) denying Petitioner's motion for a new trial on grounds of insufficient evidence,

based on his claim that the State's key witness, Candy Johnson, provided contradictory

testimony.  Petitioners also asserts that defense counsel was ineffective and Petitioner

was denied due process in that (3) Petitioner's post-conviction counsel failed to properly plead and raise certain issues in the motion for post-conviction relief; (4) trial counsel persuaded Petitioner not to testify at trial and, as a result, he was deprived of his right to testify; (5) defense counsel failed to lay a proper foundation to enter into evidence certain photographs of the scene of the exterior of Ms. Johnson's home; (6) defense counsel failed to call Joel Sanders, the boyfriend of Ms. Johnson, as a witness at trial; and (7) defense counsel failed to offer into evidence a letter delivered during jury deliberation to Petitioner from Ms. Johnson apologizing to Petitioner and demonstrating that "she perjured herself."[1]  (Doc. No. 54, p. 42.)

Respondent argues that this Court should deny federal habeas relief because the third claim is non-cognizable, the fifth claim is defaulted, the seventh claim is time-barred, and the remaining claims are without merit.  For the reasons set forth below, habeas relief will be denied.

---

[1]     Petitioner originally raised six grounds in his Petition.  On May 17, 2012, this Court, in reliance on Petitioner's representation that he did not intend to raise additional grounds for relief, granted Petitioner leave to file a second amended petition for writ of habeas corpus, for the sole purpose of correcting omissions in his first amended petition and "to clearly [set] forth all grounds previously raised in the amended petition."  (Doc. 52, pg 1.)  On June 5, 2012, Petitioner filed a second amended petition for writ of habeas corpus. Grounds 1 through 6 of the second amended petition are the same as the grounds set forth in the first amended petition, but despite the Court's admonition, Petitioner added the seventh ground for relief listed above.  Respondent notes Petitioner's failure to comply with the Court's order, but also has addressed the merits of the seventh ground for relief.  Though raised untimely, the Court will also address the merits of that ground.

# BACKGROUND

## Trial

Upon review of the record, the Court summarizes the pretrial proceedings and evidence presented at trial as follows:

Prior to trial, defense counsel filed a motion for severance, seeking separate trials of the charged offenses and asserting that the joinder of the offenses failed to satisfy the criteria of Missouri Supreme Court Rule 23.05[2] that they be of the same or similar character.  In the motion, counsel urged that the charges be severed because they occurred at different times, in different locations and involved different alleged victims; in one a weapon was used, but not in the other; one victim was a minor, but the other was not; and a condom was used in one instance, but not in the other.  The trial court denied the motion ruling that the charges were of the same or similar character, and that Defendant failed to make a particularized showing of substantial prejudice if the charges were tried together or that the jury would be unable to consider each charge on its own merits.

At trial, India McLucas, the victim of the 1998 charge, testified for the State.  She identified Petitioner as the man she met during the summer of 1998 while riding on a Bi-State bus near the Euclid Metrolink station.  She testified that he introduced himself as Dijon, that she showed him her picture in a magazine and that Petitioner said he was a

---

[2] Supreme Court Rule 23.05 provides for joinder of offenses of the same or similar character, based on two or more acts that are part of the same transaction, or two or more acts or transactions that are connected or that constitute a common scheme or plan.

photographer and showed her pictures he had taken.  The two exchanged phone numbers and when Petitioner called her several days later to arrange a photo shoot for the following day, Ms. McLucas did not show up.  Petitioner continued to call her, but she did not see him until December 17, 1998.  On that date he told her he had been out of town for a photo shoot, and that he had procured a modeling contract for a girl he had taken on the shoot.  Ms. McLucas testified that she was tired of Petitioner, but that she agreed to meet him.  (Tr. 220-28; 250-261.)

Ms. McLucas testified that, on December 17, 1998, Petitioner picked her up at her house, and they drove to a McDonald's on Delmar Boulevard.  After Petitioner dropped something off and returned to the car, he abruptly turned into an alley.  Petitioner told her that as a photographer he needed to "look at her body" and that he was going to make a pass at her or kill her if she resisted.  Petitioner then started counting and she understood this to mean that she had to decide whether to have sex with him.  He ordered her to the driver's seat, exited the driver's side and re-entered the car on the passenger's side.  He then pulled down his pants, and got on top of Ms. McLucas.  She testified that he then made her take off her pants and had intercourse with her.  Ms. McLucas did not know whether he ejaculated inside her, but he made her wipe off with an alcohol swab.  After she drove the car a few feet, she and Petitioner switched places, and he drove her home.  She testified that he threatened to kill her if she told anyone about what happened.  (Tr. 228-236; 271-281; 284-302.)

4

When she returned to her home, Ms. McLucas called her sister and her boyfriend to tell them what had happened. Later that evening she also told her mother, who took her to the Barnes Jewish Hospital emergency room. Some time later, Ms. McLucas identified Petitioner in a police line-up. (Tr. 237-240; 303-307.)

Candy Johnson, the victim of the January 26, 1999 offense, testified that she, her mother, and her two children, then two and eight years old, lived together in St. Louis. Ms. Johnson testified that in 1998, she met a man named Dijon or Dajon, whom she identified at trial as Petitioner, at the Candy Barrel, a store in Union Station.[3] She and Petitioner exchanged phone numbers, and he visited her at her house in the summer of 1998 on more than one occasion. But after he had visited her several times, Ms. Johnson told Petitioner that she did not want to see him again and told him to stop calling her. Petitioner, however, continued to call her. She testified that on the night of the incident in January, 1999, her then-boyfriend, Joel Sanders, visited her at her apartment and that they had sexual intercourse. On that same evening, Petitioner called her three times, once when her then-boyfriend was present and twice when she was alone with her children. After the third phone call, she went to sleep and was awakened by a knock on her patio door. (Tr. 338-352.)

Ms. Johnson testified that she looked out onto her patio and did not see anyone so she turned back inside. Upon turning back inside, she heard a door slam and saw

---

[3]   Ms. Johnson also knew Petitioner as "James Bush."

5

Petitioner in the hallway outside of her apartment.  Petitioner told her he wanted to talk, so she opened the door to her apartment from the hallway, walked into her apartment, and Petitioner followed closely behind.  At this point in the proceedings the judge asked the prosecutor to have Ms. Johnson repeat the sequence of events relating to Petitioner's entry into Ms. Johnson's apartment and she did so.

Ms. Johnson testified that she told Petitioner that she did not want him around her kids.  Petitioner responded by telling her she was pretty.  She then told Petitioner that she did not want to be with him and he hit her across the right jaw.  At this point, Petitioner pulled out a knife, told her to "shut up," asked if she had any condoms, and demanded her money and her necklace.  Petitioner also asked Ms. Johnson to "get something" so he could put out his cigarette.  There was some confusion in Ms. Johnson's testimony as to the order of these demands.  On further questioning Ms. Johnson testified that Petitioner first asked about the condom and the other demands followed.

At some point during the exchange between Ms. Johnson and Petitioner, Ms. Johnson said "whatever you do to me don't hurt my kids" and also told Petitioner that her mother would be returning shortly.  Ms. Johnson testified that she then went to get a cup of water for Petitioner to put out his cigarette, that he asked again if she had any condoms, and asked what time her mother was coming home from work.  She then went to get a condom from a bedroom, with Petitioner following her and holding the knife to her back and her neck.  (Tr. 352-362.)

6

When they returned to the living room, Petitioner told Ms. Johnson to bend over the couch, tied her hands with a stocking, and put on a condom.  Then Petitioner, still holding the knife to Ms. Johnson's throat, penetrated her anus, which was difficult because she continued to move.  He next penetrated her vagina.  Ms. Johnson stated that her kids were crying, and Petitioner told her to go check on them.  While she was in the children's bedroom, she called the police.  The police asked if he was still there and, after checking the living room, she found that Petitioner had left and that the door was open. Ms. Johnson testified that, several months later, she saw Petitioner at a service station and informed the police.  She subsequently identified Petitioner in a police line-up.  (Tr. 363-369; 371-379; 383-394; 402-405; 410-451.)

On cross-examination, defense counsel addressed inconsistencies in Ms. Johnson's version of the incident.  Specifically, she was asked to clarify whether her children were asleep or awake during the alleged attack or at what point they awakened.  Defense counsel challenged Ms. Johnson's explanation of how Petitioner entered her apartment and of their movements inside the apartment, questioning her about the exterior doors and windows and the floor plan of the apartment.  The prosecution had a tape of a 911 call Johnson had made, and defense counsel cross examined Johnson about her failure to mention to the 911 operator that she had been raped.

During cross-examination, defense counsel attempted to place into evidence several photographs depicting the outside of Ms. Johnson's apartment.  (Resp. Exh. C.) The prosecutor objected and the judge allowed defense counsel to make a proffer.

7

Defense counsel urged that the photographs should be admitted to show the location of the exterior doors and windows and the height of the fence outside of Ms. Johnson's apartment and to impeach her testimony regarding "whether or not anybody was ever in this apartment and sneaked in these doors that lock." (Tr. 406-407.)  The judge sustained the prosecutor's objections and excluded the photographs. (Tr. 405-407.)

The prosecution played the tape of the 911 call that Ms. Johnson made the night of the incident. (Tr. 465-475.)  Officer Mark Karpinski, of the Evidence Technician Unit with the St. Louis Metropolitan Police Department, testified that he went to Ms. Johnson's apartment after the 911 call, seized a condom wrapper and took photographs of the wounds on Johnson's neck. He stated that he did not recall seizing a cup with a cigarette from inside the apartment. (Tr. 475-482.)

Detective Mark Chambers of the Sex Crimes Unit of the St. Louis Metropolitan Police Department testified that he seized pantyhose from Ms. Johnson's apartment upon investigating the scene.  He further testified that Ms. Johnson told him that Petitioner had called her twice that night, and she showed Detective Chambers her caller ID.  Detective Chambers stated that Ms. Johnson also told him that, while calling 911, she heard the front door of her apartment slam.  In addition, he testified that Ms. Johnson described her alleged rapist as a person five-ten to six feet two inches tall, and noted that Ms. Johnson's children were not crying while he was at her residence. (Tr. 482-508.)

Petitioner did not testify at trial.  Out of the jury's presence, the judge discussed with Petitioner his decision not to testify at trial.  The judge first reminded Petitioner that

his defense counsel was a very capable and experienced trial attorney.  He then asked whether Petitioner had discussed with his attorney that his prior convictions might come into evidence if he chose to testify.  Petitioner said he had.  The judge then continued, "but even given that, that's no complete blockage to you testifying.  You want to walk up here and testify in front of the jury you have an absolute right to do that."  When asked if he had reflected enough on the question of whether or not to testify, Petitoner also answered, " yes."  In response to the Judge's questions, Petitioner stated that he was literate, had obtained his GED, and that he had made his decision about whether or not he wished to testify.  Then the following exchange occurred:

> The Court:     And what is your decision?
>
> Defendant:     I don't know.  No, I don't feel I should testify, sir.
>
> The Court:     And Missouri constitution and U.S. constitution
>                protects that right.  You have made a free will
>                choice not to testify, is that correct?
>
> Defendant:     Yes, sir.
>
> The Court:     Do you have any questions of me about
>                anything in that regard?
>
> Defendant:     No, sir.

(Tr. 575-578.)

After the close of evidence and while the jury was deliberating, Petitioner says that a bailiff handed him a handwritten, unsigned, and undated letter which reads as follows:

> Dear Dijon,

> I never meant for this relationship to take a turn for the worse and go this far. Some things don't always turn out the way they should,[sic] It was simply because I needed you, you should have just loved me. I hope your attorney will stand by you for long [sic] as you are away. You are truly a good person and I should have been honest;  Again I'd like to say to you, I never meant to hurt you. When you stop seeing me for a while, I became upset with you and I wasn't thinking straight.  I hope you can find it in your heart to forgive me for lying and making things bad for you. You will always have a special place in my heart and some day I'll make it up to you.

(Doc. No. 54 at 43.)  Petitioner asserts that when he received the letter, he disclosed it to defense counsel but made no mention of the letter to the judge.

Thereafter, the jury returned a verdict convicting Petitioner of second degree robbery and the forcible rape of Candy Johnson, but was unable to reach a verdict as to a second charge of forcible rape of India McLucas.

Petitioner was sentenced several months later.  Petitoner spoke on his own behalf at the sentencing, but at no time between the entry of the verdict and the sentencing, or during his sentencing, did Petitioner refer to the letter or otherwise bring it to the judge's attention.

**Direct Appeal**

On appeal from his conviction at trial, Petitioner raised four points, three of which he also alleges in his federal habeas petition: (1) that the trial court erred in denying his motion to sever the offenses involving Candy Johnson from the charge involving India McLucas; (2) that Ms. Johnson's testimony was so inconsistent that it should have been disregarded, and that without her testimony, the evidence was insufficient to support the

conviction of forcible rape; and (3) that the trial court erred when it excluded photographs of the crime scene, specifically of the area outside Johnson's apartment.

The Missouri Court of Appeals found that joinder of the offenses was proper given the similar tactics the alleged perpetrator used against each victim, i.e., first approaching both victims in the summer of 1998, introducing himself as Dijon or Dajon, and calling them late at night.  The appellate court further found that, in light of these similarities, the trial court did not abuse its discretion in denying Petitioner's motion to sever the offenses. The appellate court found that Johnson's testimony "was not so incredible or contradictory as to rob [it] of all probative force" and that her testimony formed a sufficient basis for the jury to have found beyond a reasonable doubt that Petitioner committed forcible rape.  The appellate court also found that the trial court did not abuse its discretion in refusing to admit the photographs, as they depicted matters and highlighted issues that were largely peripheral to the charges of forcible rape and second degree robbery.[4]

**Petitioner's Motion for Postconviction Relief**

Petitioner filed a pro se motion for post conviction relief asserting that he received ineffective assistance of counsel because trial counsel: (1) did not allow him to testify; (2) failed to ask for an examination of Ms. Johnson to determine if she had had sex or contact

---

[4]   With regard to Petitioner's remaining point on appeal, which is not raised in this Petition, the appellate court found that the trial court did not abuse its discretion when it permitted the prosecutor to ask certain leading questions.

with Petitioner on the night of the incident; (3) failed to draw the jury's attention to the fact
that the plastic cup the prosecutor claimed had been at the scene of the crime in Ms.
Johnson's home was never put into evidence.  Petitioner further alleged prosecutorial
misconduct because the prosecutor (4) in his opening statement, referred to the Petitioner
as a rapist; and (5) persisted in asking leading questions of the lead witness.  Finally,
Petitioner asserted (6) that the prosecutor failed to disclose exculpatory evidence and
objected to the entry into evidence of the excluded photographs of the exterior of Ms.
Johnson's apartment, which would have called her credibility into question.

In an amended motion for post-conviction relief, filed by appointed counsel,
Petitioner raised forty-five grounds for relief.  Four of those grounds are relevant here.
Petitioner claimed that trial counsel was ineffective because she (1) failed to lay a proper
foundation for the admission of the photographs of the exterior of Ms. Johnson's apartment
into evidence; (2) persuaded Petitioner not to testify at trial; and (3) failed to call Joel
Sanders, the boyfriend of Ms. Johnson, as a witness at trial.  (4) Though the basis of the
alleged error is unclear, Petitioner also claimed error based on the fact that Ms. Johnson
sent Petitioner a letter which a bailiff delivered to Petitioner during trial, in which she
apologized for lying and asked Petitioner to forgive her.

The motion court (which was the same as the trial court) denied grounds six through
thirty-five of the postconviction motion because they asserted trial errors not cognizable on
a Rule 29.15 motion.  With respect to the grounds addressed in this Petition, the motion
court denied the motion for ineffective assistance related to the photographs because on

12

cross-examination and in closing argument trial counsel challenged Ms. Johnson's testimony about Petitioner's entry into the apartment and her testimony about how the assault occurred based on the layout of the apartment.  With regard to the decision not to testify, the motion court found that the colloquy with Petitioner indicated that Petitioner had discussed the issue of testifying with his attorney, that he was aware that his prior convictions might come to light if he testified, and that he made a choice not to testify of his own free will.

The motion court found that counsel was not ineffective for failing to point out that no DNA evidence was alleged to have belonged to Petitioner, because trial counsel had, on cross-examination of Ms. Johnson, pointed out that Ms. Johnson had declined to have any DNA testing done because she had sexual relations with her boyfriend on the evening of the incident.  The motion court also found that counsel was not ineffective for failing to point out that the State failed to produce physical evidence of the cigarette and cup that Petitoner allegedly used at Ms. Johnson's apartment, because trial counsel had in fact mentioned this at trial.  (Tr. 619.)

The motion court also rejected Petitioner's argument regarding trial counsel's failure to call Joel Sanders to testify.  Petitioner had contended that had Sanders testified, the jury would have seen that he matched the description given to the police by Ms. Johnson of the person who committed the crime.  The motion court found that because it had been admitted that Ms. Johnson's boyfriend was present at her apartment earlier in the evening,

there was no reasonable probability that the outcome of the trial would have been any different, if Ms. Johnson's boyfriend had been called to testify.

The motion court conducted an evidentiary hearing with respect to the letter allegedly sent by Ms. Johnson, at which Petitioner and an expert called by Petitioner testified. Petitioner testified that after the close of the trial evidence, while the jury was deliberating, a bailiff handed him an envelope with the word "Whitehorn" written on it and that inside the envelope he found an undated, unsigned letter from Ms. Johnson generally asking for forgiveness. Petitioner testified that he knew that the letter was from Ms. Johnson because he recognized her handwriting having seen it twice before, once in a letter and a second time in a short note. He said that he told his attorney about the letter and that his attorney told him, "Well, it's too late now. The trial is over, but maybe we can get the judge to give you some leniency."

On cross-examination, the state's attorney then asked Petitioner if he agreed that, "this letter doesn't say anything in it, 'I'm sorry I accused you of rape;' correct, doesn't say that in this letter?" Petitioner responded, "No ma'am, it doesn't." (Resp. Exh. H at 25.) Petitioner acknowledged that he did not mention the letter to the Court at his sentencing hearing or otherwise notify the Court of the letter. When asked on redirect why he had not mentioned the letter at sentencing, he stated that "it was the last thing on his mind" and that he was thinking about many things. *Id.* at 23.

Ms. Johnson did not testify at the evidentiary hearing. In regard to her absence, Petitioner testified, "I've searched - my family has paid investigators to find Ms. Johnson to

14

bring her here as well as I've asked my attorney as well as I asked a prosecutor to get her here, yet no one seems to be able to find her."   (Resp. Ex. H at 8-9, 15, 17, 22, 25.)

Petitioner also called Stephen McKasson (also spelled "Steven McCassin" in some portions of the record), an expert in the field of document examination.  McKasson compared the letter allegedly written by Ms. Johnson with writing samples from Petitioner and concluded that Petitioner had not written the letter.  McKasson further testified that the letter was naturally written and the handwriting was not disguised.  However, McKasson was unable to determine if Ms. Johnson wrote the letter because Petitioner did not provide McKasson with a sample of  Ms. Johnson's handwriting.  *Id*. at 31, 35-37.

On the basis of the evidence adduced at the hearing, the motion court found that Petitioner did not write the letter, but that it was not possible to say who had written it.  The court further found that the letter was "ambiguous" and that it had not been brought to the attention of the trial judge, but noted that Petitioner had sent a copy of the letter to several attorneys after his sentencing.

The motion court denied Petitioner's claim with respect to the letter, noting the general rule that post conviction proceedings are not appropriate vehicles for relief on the basis of newly discovered evidence.  The court noted that Petitioner could seek relief by filing a petition for writ of habeas corpus, or seek a pardon from the governor.  The court emphasized that Petitioner had not alleged on the basis of the letter that the prosecution knew Ms. Johnson's testimony was false or knowingly obtained his conviction on the basis of perjured testimony.  The motion court found the letter "troubling," but noted that there

15

were many uncertainties surrounding the letter such as who wrote it, what "regret" it referred to, and why the matter was not raised at an earlier time.

**Appeal of Postconviction Motion**

On appeal from the denial of his motion for postconviction relief, Petitioner reasserted three bases for relief, all of which are relevant here.  Petitioner asserted that trial counsel was ineffective (1) for failing to produce and introduce photographs of the victim's apartment which would refute the victim's recitation of the attack; (2) because he "thwarted" Petitioner's wish to testify and persuaded him otherwise; and (3) because he failed to present Joel Sanders, Ms. Johnson's boyfriend, at trial to impeach her testimony regarding her assailant's height.

The Missouri Court of Appeals denied all claims.  With respect to the first ground raised, Petitioner argued that if counsel had presented clear and helpful photographs to the trial court, they would have been admissible to impeach Ms. Johnson's account of the attack.  The appellate court found that in the amended motion for postconviction relief, Petitioner had raised a similar, but nonetheless different claim, that counsel was ineffective for failing to lay a proper foundation for the photographs.  The appellate court concluded that Petitoner waived the "produce and introduce" claim raised on appeal because he failed to include it in his amended motion for post-conviction relief.  The appellate court further concluded that it could not consider the merits of the claim regarding the laying of a proper foundation because it had no authority to consider claims not asserted in a movant's post-conviction motion.  *Eleverum v. State*, 232 S. W. 3d 710, 717 (Mo. Ct. App. 2007).

Finally, the appellate court held that if either claim were subject to review on the merits, it would be denied because trial counsel attempted to introduce photographs of the victim's apartment and surrounding areas, made a proffer when the prosecutor objected to their admission, and although judge sustained the prosecutor's objection and excluded the photographs, counsel extensively cross examined the victim about the layout of her apartment and patio.

The appellate court also rejected Petitioner's claim that defense counsel "thwarted" his wish to testify.  The appellate court noted that the decision to testify lay solely with Petitioner.  The appellate court found that defense counsel's advice constituted sound trial strategy and did not rise to the level of ineffectiveness, because defense counsel's recommendation to Petitioner that he not testify in order to avoid disclosure of his prior convictions was, in light of overall trial strategy, sound and reasonable advice.

Finally, the appellate court denied Petitioner's claim of ineffective assistance of counsel based on counsel's failure to call Joel Sanders to testify at trial.  Petitioner argued that his defense theory at trial was "deliberate misidentification" and that Sanders should have been called to testify because he matched Ms. Johnson's description of her assailant. The appellate court held that Petitioner failed to allege facts indicating that defense counsel knew or should have known that Petitioner wanted Sanders to testify, that Sanders could be located, or that he was willing to testify.  In addition, Petitioner failed to demonstrate how the outcome of the trial would have been different if Sanders had testified.

## DISCUSSION

### Procedural Default

Respondent argues that Petitioner's fifth claim herein, regarding the photographs, is procedurally defaulted because, although it was raised in his pro se post-conviction motion, it was not included in his amended post-conviction motion, prepared with the assistance of appointed counsel.

Under the doctrine of procedural default, "a federal [habeas] court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, ___ U.S. ___, 2012 WL 912950, at *6 (Mar. 20, 2012). An exception to this rule is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Id.* Attorney error on the part of post-conviction counsel at the initial-review stage may qualify as cause for a procedural default. *Id.* at 7. The Court may also reach the merits of Petitioner's claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted, by proving his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial," and establishing "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir. 1996) (citing *Schlup v. Delo*, 513 U.S. 298, 322 (1995)).

18

In light of *Martinez*, this Court will err on the side of caution, and review the merits of the claim raised here that was included in Petitioner's pro se post-conviction motion.

**<u>Standard of Review</u>**

Under the Antiterrorism and Effective Death Penalty Act of 1996,

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

"For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (citation omitted).

**<u>Denial of the Motion to Sever</u>**

In ground one, Petitioner asserts that the trial court's decisions to join the two rape charges for trial and to deny his motion to sever the trials of the two offenses, violated his due process rights.

"Two offenses may be charged and tried together if they are of the 'same or similar character,' and 'where the offenses are similar in character and occurred over a relatively short period of time and the evidence overlaps, joinder is ordinarily appropriate.'" *U.S. v. Tyndall*, 263 F.3d 848, 849 (8th Cir. 2001).  In addition, "'[t]he presumption against severing properly joined cases is strong," and the mere "possibility that a defendant's chances for acquittal may be better in separate trials is an insufficient justification for severance.'" *U.S. v. Thompson*, Nos. 11–1765, 11–1813, 11–2124, 11–2604, 2012 WL 3657016 , at *7 (8th Cir. Aug. 28, 2012) (quoting *United States v. Ruiz*, 412 F.3d 871, 886-87 (8th Cir. 2005)).

To obtain federal habeas relief for a state court's failure to sever different charges for trial, a Petitioner must show that the failure to grant severance rendered the trial "fundamentally unfair."  *Wharton-El v. Nix*, 38 F.3d 372, 374 (8th Cir. 1994) (citation omitted).  In *Wharton-El*, the Eighth Circuit rejected a habeas Petitioner's claim that his due process rights were violated by the state court's denial of his motion to sever for trial charges of two robberies committed within three hours.  *Id.*  The Eighth Circuit held that the state court's finding that the two robberies were part of a common scheme or plan was

presumed to be correct, and noted that the trial court instructed the jury to consider Petitioner's guilt for each count separately.  *Id.* at 375.

Petitioner maintains that the two rape charges here should not have been joined for trial because they are not of a "similar character" so as to make joinder proper. Specifically, Petitioner asserts the following differences between the alleged offenses: they occurred more than a month apart; one victim was a teenager and the other was not; a weapon was used in one offense but not in the other; one offense occurred in a car, the other in the victim's home; one victim was attacked from the front and the other was attacked from behind.  He also observes that the jury hung on the count involving a victim whose testimony he characterizes as "more credible" and convicted him on the basis of testimony from another victim he contends was less trustworthy.

Upon review of the record, the Court finds no basis for a determination that the joinder of the two rape offenses rendered the trial fundamentally unfair.  The trial court denied the motion, ruling that the charges were of the same or similar character, and that Defendant failed to make a particularized showing of substantial prejudice if the charges were tried together or that the jury would be unable to consider each charge on its own merits.  The Court notes that Petitioner met both women at the end of 1998, that the alleged rapes occurred over less than one month, and that there were many similarities between the two incidents.  And as in *Wharton-El*, the record indicates that the trial court instructed the jury to give separate consideration to the evidence of each offense and to reach separate verdicts with respect to each count.  (Resp. Ex. A at 60.)  The fact that the

jury reached different conclusions about Petitioner's culpability with respect to the two rape charges indicates that the jury heeded the trial court's instructions and separately considered each offense.

Moreover, Petitioner does not allege here the specific manner in which the joinder of the two offenses prejudiced him at trial.  This Court's review of the record also fails to reveal a basis for a finding of such prejudice.  Nevertheless, this Court cannot say that the decisions reached by the state courts were fundamentally unfair or involved an unreasonable application of federal law.  On the basis of the foregoing, the Court concludes that Petitioner's first ground for federal habeas relief is without merit.

**Sufficiency of the Evidence**

Petitioner asserts that his due process rights were violated because the state's key witness, Ms. Johnson, provided contradictory testimony and that without her testimony, the evidence would have been insufficient to sustain a conviction.

The due process clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  In the § 2254 setting, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004).

Upon review of the record as a whole, including all portions of Ms. Johnson's testimony, and construing the evidence in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could have found, beyond a reasonable doubt, that Petitioner committed the essential elements of second-degree robbery and forcible rape for which he was convicted.  Ms. Johnson gave specific and detailed testimony demonstrating that Petitioner raped her.  (Resp. Exh. A at 362-364.)  In addition, she testified that during the rape, Petitioner was armed with a knife and that he stole her necklace and money at knifepoint.  *Id.* at 361, 362-364.  Her testimony did include certain apparent inconsistencies, but upon further questioning and on cross-examination, these issues were largely clarified.  Further, her testimony was corroborated by the testimony of the officers regarding the wounds on her neck, the number on her caller ID, and other evidence found at the scene.  Finally, the Court cannot say that the appellate court's determination that the inconsistencies did not deprive her testimony of probative value is not entitled to deference.

## Ineffective Assistance of Counsel Claims

"The right to the effective assistance of counsel at trial is a bedrock principle in our justice system."  *Martinez*, 2012 WL 912950, at *8.  To succeed on a claim of ineffective assistance of defense counsel, a habeas petitioner must establish both "that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency there is "a reasonable probability" that the result of the trial would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  "A

23

reasonable probability is a probability sufficient to undermine confidence in the outcome"

of the proceeding.  *Id.* at 694.

In the § 2254 context, a petitioner :

must do more than show that he would have satisfied *Strickland*'s test if his
claims were being analyzed in the first instance, because under §
2254(d)(1), it is not enough to convince a federal habeas court that, in its
independent judgment, the state-court decision applied *Strickland*
incorrectly.  Rather, he must show that the [state court] applied Strickland
to the facts of his case in an objectively unreasonable manner.

*Underdahl v. Carlson*, 381 F.3d 740, 742 (8th Cir. 2004) (quoting *Bell v. Cone*, 535 U.S.

685, 698-99 (2002)).  Furthermore, the Eighth Circuit has held that "a habeas petitioner

cannot build a showing of prejudice on a series of errors, none of which would by itself

meet the prejudice test."  *Hall v. Luebbers*, 296 F.3d 685, 692-93 (8th Cir. 2002); *see*

*also Kennedy v. Kemna*, 666 F.3d 472, 485 (8th Cir. 2012).

Petitioner first alleges that counsel was ineffective for failing to properly plead

certain issues in the motion for post-conviction relief.  (Doc. No. 26 at 7.)  Claims

alleging the "ineffectiveness or incompetence of counsel" during a "collateral post-

conviction proceeding" provide no basis for relief in a federal habeas proceeding.  28

U.S.C. § 2254(I).  In addition, Petitioner has not specified how the pleadings were

inadequate or how that inadequacy prejudiced him.  Nor has he offered cause for his

failure to raise this ground on appeal from his motion for post-conviction relief.

Petitioner next contends that counsel was ineffective because she thwarted his

right to testify at trial and persuaded him to waive that right.  The Missouri Court of

Appeals rejected this claim, holding that counsel's advice to Petitioner that he not testify in order to avoid disclosure of his prior conviction was reasonable and reflected sound trial strategy.  ( Resp. Exh. L at 5-6.)  The state court further found that the colloquy between Petitioner and the judge demonstrated that Petitioner was not thwarted or persuaded, but rather made a knowing, voluntary decision not to testify.  (Resp. Exh. A at 575-577).

Having reviewed the record, the Court cannot say that the state appellate court misconstrued the facts in the case or misapplied federal law in determining that counsel was not ineffective and that counsel had reasonably advised Petitioner regarding the consequences of his decision to testify.  "[C]ounsel's decision not to call [defendant] as a witness to prevent the government from cross-examining [him] about an earlier drug conviction clearly falls within the limits of reasonable trial strategy. " *Sumlin v. United States*, 46 F.3d 48, 49 (8th Cir. 1995); *see also United States v. Orr*, 636 F.3d 944, 955 (8th Cir. 2011).  Nor can the Court say that the appellate court's interpretation of the colloquy between Petitioner and the judge was not entitled to deference.  Finally, Petitioner makes no showing that counsel's advice had a prejudicial effect on the outcome of the trial.

Petitioner also claims that trial counsel was ineffective by failing to "lay a proper foundation to have enter evidence [sic]" regarding the introduction of the photographs of the crime scene, but this claim also fails.  (Doc. No. 54 at 36.)  Respondent asserts and the Court agrees that Petitioner defaulted on this claim by abandoning it on appeal from

the denial of his post-conviction motion.  *Sweet v. Delo*, 125 F.3d 1144, 1150 (8th Cir.

1997).  Petitioner raised the claim in his amended motion for post-conviction relief, but

failed to raise it on appeal from the denial of that motion.  (Resp. Exh. I at 26, ¶36; Resp.

Exh. L at 4.)  The Missouri Court of Appeals held that this claim was procedurally

defaulted because Petitioner did not raise it in his amended post-conviction relief motion.

(Resp. Exh. L at 3-4.)

In order to overcome this default, Petitioner must demonstrate either cause and

prejudice or a manifest injustice, in the form of newly discovered evidence of actual

innocence.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Petitioner offers no

justification for his failure to present this claim on appeal.  Nor has he alleged manifest

injustice or presented newly-discovered evidence of innocence.  *Id.*  Petitioner cannot

therefore overcome his procedural default of this claim.

Nevertheless, in light of *Martinez*, the Court will consider the merits of this claim.

The appellate court, explicitly recognizing *Strickland* as the governing authority for its

determination, concluded that counsel acted reasonably and that the admission of the

photographs would not have changed the outcome of the trial, because trial counsel

extensively cross-examined the victim about the scene of the crime.  *Strickland*, 466 U.S.

at 668, 694.  ( Resp. Exh. L at 4.)

On this record, the Court cannot say that the state appellate court misconstrued the

facts in the case or misapplied federal law, either in determining that defense counsel was

not ineffective, or in determining that the result of the trial would not have been different

had defense counsel succeeded in placing the photographs into evidence.  Petitioner

argued that he could not have knocked on the victim's patio door and then run to the front

door without being seen and that the photographs would have demonstrated the validity

of this defense.  (Resp. Exh. I at 26, ¶36.)  The record reveals, however, that trial counsel

extensively questioned the victim about the location of the windows in her apartment, the

size of the fence, and the proximity of the front door to the fence and the patio.  (Resp.

Exh. A at 404-420.)  Further, there is no evidence to suggest that Petitioner could not

have jumped the fence or walked through the unlocked gate in the fence to reach the

victim's front door.  The photographs do not represent new or different evidence, and

would have been cumulative of the victim's testimony which clearly established all of the

information available in the photographs.  (Resp. Exh. C.)  Therefore, the appellate

court's determination that there is no reasonable probability that the jury, having seen the

photographs, would have reached a different result and acquitted Petitioner is not

unreasonable.

Petitioner also asserts that counsel was ineffective in failing to offer the testimony

of Ms. Johnson's boyfriend, Joel Sanders, to impeach her testimony regarding the

assailant's height.  The Court finds nothing in the record to indicate that the state

appellate court misapplied federal law or misconstrued the facts of the case in concluding

that the result of the trial would not have been different if Sanders had testified.  There

was overwhelming evidence of Petitioner's identity based upon Ms. Johnson's prior

association with him, and no apparent dispute that Sanders had visited Ms. Johnson's apartment earlier in the evening.

Finally, Petitioner asserts in his recently amended Petition that defense counsel was ineffective for failing to offer into evidence a letter allegedly from Ms. Johnson demonstrating that "she perjured herself." (Doc. No. 54, p. 42.) Respondent urges the Court to deny this claim as untimely. The applicable statute, 28 U.S.C. § 2244(d)(1), allows a petitioner one year from the conclusion of direct review to file his claim for habeas relief. In this case, direct appeal of the criminal proceeding concluded in 2002 and Petitioner first raised this ground more than ten years later in June of 2012. Taking into account the provision for tolling set forth in 28 U.S.C. § 2244(d)(2), it is clear that more than a year passed between the conclusion of the post-conviction review and the filing of this seventh ground for habeas relief. And this claim is sufficiently distinct from the claims originally asserted such that it does not relate back to the date of the original Petition. The claim does not arise out of the same set of operative facts or satisfy the test for similarity of "time and type," and thus, for purposes of habeas review, is time-barred. *United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006).

Respondent also asserts that the claim is barred by procedural default because after the motion court held an evidentiary hearing on the issues presented by the letter and refused to grant relief, Petitioner failed to appeal such denial to the Missouri Court of Appeals. Though this contention also appears to be true, the Court will nonetheless address the merits, because the claim fails on the merits as well. *Trussell v. Bowersox*,

447 F.3d 588, 590 (8th Cir. 2006) (holding that although timeliness of habeas corpus petition was in doubt, because the statute of limitations defense was not a jurisdictional bar to the court's review, court properly proceeded to the merits of the petition in the interest of judicial economy).

Petitioner apparently alleges that counsel was ineffective for failing to offer the letter into evidence.  As noted, the factual basis of the letter was considered in the postconviction proceeding.  The motion court found that the letter was not given to Petitioner until after the close of evidence and was only shared with trial counsel on the "day of the verdict."  In addition, although the motion court found that Petitioner did not write the letter, Petitioner's assertion that Ms. Johnson had written the letter was not proven to the motion court's satisfaction.  The motion court further found the language of the letter ambiguous, and noted that the victim did not appear at the post-conviction hearing to ratify the letter.  The Court cannot say that these findings by the motion court are unreasonable with respect to the import and effect of the letter, and that the court's conclusions are entitled to deference under 28 U.S.C. § 2254(d).  *Hardy v. Cross*, 132 S. Ct. 490, 494 (2011).

Given the lack of authentication and the ambiguous language of the letter, the Court cannot say that trial counsel's decision not to bring the letter to the attention of the court after the close of evidence fell below an objective standard of reasonableness or that but for this deficiency there is a reasonable probability that the result of the trial would have been different.  *Strickland*, 466 U.S. at 688.

The claim also might be interpreted as an assertion that Petitioner is "probably actually innocent" of the crimes for which he was convicted, by proving his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial." *Bowman*, 85 F.3d at 1346.  But given the ambiguity and uncertainties attached to the letter, and the fact that its authorship has not been established, such a claim must be denied because Petitioner has not established on the basis of the evidence adduced at the hearing, "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.*

## CONCLUSION

On the basis of the foregoing, the Court concludes that Petitioner is not entitled to federal habeas relief.  Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2).  *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

The Court having previously granted Petitioner's request to proceed in forma pauperis,

**IT IS HEREBY ORDERED** that his motion to proceed in forma pauperis (Doc. No. 55) is **DENIED as moot**.

30

The Court having considered the seventh basis for habeas relief set forth in the amended petition (Doc. No. 54) filed June 5, 2012,

**IT IS FURTHER ORDERED** that Petitioner's Request to Response to Court Order for Respondent and for Assistance for Petitioner (Doc. No. 59) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Petition of Darrell Whitehorn for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September, 2012.